87 F.3d 214
 Stanley J. DENLINGER, as Administrator of the Estate of
Elmer Denlinger, and E. Benjamin Denlinger,
Plaintiffs-Appellants,
v.
John W. BRENNAN, Religious Order of St. Matthew, and Church
of St. Matthew, Defendants-Appellees.
 No. 94-3789.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 28, 1996.
Decided June 24, 1996.
 
 Stanley J. Denlinger, Elkhart, IN, pro se.
 E. Benjamin Denlinger, South Bend, IN, pro se.
 John W. Brennan, Michigan City, IN, pro se.
 Religious Order of St. Matthew, Church of St. Matthew, Elmont, NY, pro se.
 David E. Vandercoy, Carla Camille Waters, Law Student, Valparaiso University School of Law, Valparaiso, IN, amicus curiae on behalf of appellants.
 Jerold S. Solovy, David Odom, Jenner & Block, Chicago, IL, amicus curiae on behalf of appellees.
 Before POSNER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 "Render to Caesar the things that are Caesar's" (Matthew 22:21) does not figure prominently in the theology of the Church of St. Matthew. Its members are similarly unimpressed by Justice Holmes's observation that "[t]axes are what we pay for civilized society." Compania General de Tabacos de Filipinas v. CIR, 275 U.S. 87, 100, 48 S.Ct. 100, 105, 72 L.Ed. 177 (1927) (dissenting opinion). Perhaps they think the latter proposition falsified by the tenfold increase in tax rates since Holmes's day, without a corresponding improvement in the level of civilization. The Church, and a related Order of St. Matthew, take title to the members' real property and receive an appointment of their income, returning the money (less a service fee) as a stipend. Members report on their tax returns (when they bother to file) that they have neither income nor assets. It is a successor to the Life Science Church, which was found to be a tax fraud and dissolved in bankruptcy. In re Life Science Church of River Park, 34 B.R. 529 (Bankr.N.D.Ind.1983). The IRS and the courts have not been fooled by the substitution, though unscrambling the transactions takes effort. See generally Religious Order of St. Matthew v. Brennan, 77 A.F.T.R.2d 827 (N.D.Ind.1995); United States v. Stanley Denlinger, 75 A.F.T.R.2d 611 (N.D.Ind.1994).
 
 
 2
 The Church's adherents congregate in Elmont, New York, and South Bend, Indiana. Until a few years ago, the leaders of the Elmont branch included John W. Brennan, and the leaders of the South Bend branch included John Organtini, Elmer Denlinger, and Emmett Troyer. They took turns as defendants in tax cases. Brennan pleaded guilty to multiple felonies, including tax evasion and helping others to evade taxes. Organtini, the "pastor" in South Bend, also was convicted of tax evasion. Denlinger and Troyer avoided prosecution but had to surrender assets in civil cases. United States v. Elmer Denlinger, 982 F.2d 233 (7th Cir.1992); United States v. Troyer, 91-2 U.S. Tax Cas. para. 50,401 (N.D.Ind.1991), affirmed, No. 91-3560, 983 F.2d 1074 (7th Cir. Dec. 16, 1992). With the drumbeat of litigation came internecine conflict. On a visit to South Bend, Brennan detected what may be the Church's only mortal sin: wasting money. After examining the books of the South Bend branch, Brennan remarked to William Voelker that Denlinger "ought to be shot." Denlinger was a chiropractor, and Voelker had performed repairs to Denlinger's office, which the Church claimed as religious property. Brennan apparently thought that Denlinger was cheating his confederates and proceeded to act like "the sanctimonious pirate, that went to sea with the Ten Commandments, but scrap'd one out of the table." Shakespeare, Measure for Measure act I scene 2. He beat Denlinger with an iron bar until Denlinger fell unconscious; when Denlinger came to and tried to defend himself, Brennan pumped bullets into his torso, as did Voelker. Next the two men trundled Denlinger's inert body into the trunk of his car, which they drove to Illinois. There they doused the corpse with gasoline, set it ablaze, and fled in Voelker's car. Indiana eventually caught up with Brennan, who was convicted of murder. Brennan v. State, 639 N.E.2d 649 (Ind.1994).
 
 
 3
 Denlinger was in life unwilling to pay the taxes that support units of government, including the courts. Without evincing any sense of irony, Denlinger's estate, through his son Stanley, filed this suit seeking damages from Brennan, the Church, and the Order. When it became clear to the plaintiffs that federal jurisdiction under 28 U.S.C. § 1331 is unavailable (organized tax evaders are the antithesis of state action), they amended the complaint to assert diversity of citizenship and jurisdiction under 28 U.S.C. § 1332(a)(1). By the time the district court acted on Brennan's motion to dismiss, the sentence for tax evasion was over, and Brennan was in Indiana State Prison at Michigan City, Indiana. His earliest parole date is in 2012, when he will be 79 years old. All plaintiffs are citizens of Indiana. Brennan filed an affidavit stating that he "resides" at the Indiana State Prison. The district court took this to be a claim of domicile in Indiana and dismissed the complaint for lack of complete diversity. ("Citizenship" for purposes of § 1332 means domicile rather than residence. America's Best Inns, Inc. v. Best Inns of Abilene, L.P., 980 F.2d 1072, 1074 (7th Cir.1992).) Plaintiffs sought reconsideration, presenting the district judge with a deposition from another case in which Brennan revealed that until his imprisonment he lived in New York State, where his wife still resides, and considered his vocation to be Minister General of the Order of St. Matthew, which he directed from Elmont. The district judge allowed that Brennan's "residence prior to his incarceration appears to have been in New York, despite his many trips to Indiana." Nonetheless, the judge held, because Brennan now has an address in Indiana, and wants the case dismissed, he must be treated as a domiciliary of Indiana.
 
 
 4
 Stanley Denlinger and Brennan have represented themselves in this litigation. Neither is a pauper, so we asked counsel to serve as amici curiae to argue the appeal pro and con. These efforts have our thanks. It is now clear that the district court's disposition was erroneous, and for two independent reasons.
 
 
 5
 First, let us assume that Brennan has become a citizen of Indiana. It does not follow that the case must be dismissed. Jurisdiction depends on citizenship at the time a case begins. Julien v. Sarkes Tarzian, Inc., 352 F.2d 845, 846 (7th Cir.1965). When Stanley Denlinger filed this suit, Brennan was in the federal prison in Danbury, Connecticut. He did not enter Indiana's custody until his federal term for tax evasion expired. Even if, while stewing in a cell in Danbury, Brennan intended to make Indiana his home for life, that would not establish an Indiana domicile--for it takes physical presence in a state, with intent to remain there, to establish domicile. Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir.1992). When this case got under way, Brennan was a citizen of New York.
 
 
 6
 Second, we very much doubt that Brennan is now a citizen of Indiana. "[S]ince domicile is a voluntary status, a forcible change in a person's state of residence does not alter his domicile; hence the domicile of [a] prisoner before he was imprisoned is presumed to remain his domicile while he is in prison." Sullivan v. Freeman, 944 F.2d 334, 337 (7th Cir.1991). Brennan tells us that he resides in Indiana and gives an Indiana address--what other choice has he?--but does not tell us that he plans to remain. He is unlikely to be welcome at the South Bend branches of the Church and Order (if they still exist in 2012). His roots are in New York. The presumption articulated in Sullivan is rebuttable, but on this meager record it has not been rebutted.
 
 
 7
 Does it follow that the suit should be reinstated? Plaintiffs are citizens of Indiana; Brennan likely is (and certainly was, at the critical moment) a citizen of New York; but what of the Church and the Order? Just why these entities were named as parties is mysterious. Plaintiffs have not articulated any theory of their liability (nor is it likely that they possess assets free of the tax collector's claims). Execution of embezzlers is not in the job description of the Order's Minister General, and intentional torts outside the scope of employment usually do not lead to an employer's vicarious liability. What is more, a person claiming to be the current head of the Church in Elmont has filed a declaration that Brennan lost his positions of leadership in 1989, two years before the murder. Still, they are parties, and their citizenship must be ascertained.
 
 
 8
 The complaint is defective. It alleges that both the Church and the Order are organizations located in New York. Well, what kind of organizations? If corporations, where are they incorporated, and where is each's principal place of business? New York is a possible, but not an inevitable, principal place of business. If they are not corporations, then where are their members? Membership organizations, like partnerships, are citizens of every state of which any member is a citizen. Loss v. Blankenship, 673 F.2d 942, 949-50 (7th Cir.1982); cf. Carden v. Arkoma Associates, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). A quick check of corporate records, now conveniently located online, shows that a "Church of St. Matthew" (former name, "Reformed Life Science Church in America"), claiming to have a principal office in Elmont, New York, and a John Brennan as President, was incorporated in California in 1982. An "Order of St. Matthew", claiming to have a principal office in Kings County, New York, was incorporated in New York in 1984. This information suggests that it would not be futile to give plaintiffs an opportunity to make the appropriate allegations. But the California records imply that the Church has not paid its franchise fee since 1989. (Ah, those devilish taxes!) Many states treat failure to pay as an event of dissolution; and if the Church has been dissolved, it now has the status of a partnership, doubtless with partners in Indiana.
 
 
 9
 Failure to include the necessary allegations in the complaint, even after an opportunity to amend, usually means dismissal. Plaintiffs had an opportunity to amend, and another opportunity to address the district court. But at the time they were concentrating on Brennan's citizenship. So was the district court. Plaintiffs' voluntary pro se status does not give them any privilege to engage in sloppy litigation, or any extra entitlement to amend the complaint. McNeil v. United States, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). Someone who spurns counsel cannot insist that his adversary and the judicial system provide equivalent advice and protection. But taking into account the fact that the statute of limitations expired while the case was pending in the district court, see Ind. Code § 34-1-1-2, we think that plaintiffs were entitled to at least a clue that there are problems in the allegations about the citizenship of the organizational defendants, so that they could cure a (potentially) curable defect. See English v. Cowell, 10 F.3d 434, 437 (7th Cir.1993).
 
 
 10
 One way to cure this defect would be to dismiss the Church and the Order as parties. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). The litigation then could proceed between Brennan and the surviving Denlingers. Another way would be to make, and support, the necessary allegations about the citizenship of the Church and the Order. If plaintiffs choose the latter route, the district court should insist that they establish that both entities are still considered to be corporations under California and New York law--for, if they are not, the groups' Indiana operations certainly defeat complete diversity of citizenship. But the court should not again place any weight on its belief that Indiana's courts are superior forums for this straightforward wrongful death action. Federal jurisdiction under 28 U.S.C. § 1332 is not reserved for complex commercial cases. Many people believe that the diversity jurisdiction should be curtailed, but a district judge's view about the relative competence of state and federal courts to deal with particular classes of litigation does not affect the interpretation and application of the existing statute.
 
 
 11
 REVERSED AND REMANDED.