**INDIANA GAS COMPANY, INC., Richmond Gas Corporation d/b/a Indiana Gas Company, Inc. and Terre Haute Gas Corporation d/b/a Indiana Gas Company, Inc., Plaintiffs,**

v.

**AETNA CASUALTY & SURETY COMPANY, Connie Lee Insurance Company, Continental Casualty Company, Continental Insurance Company, Greenwich Insurance Company, Home Insurance Company, Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies, North River Insurance Company, Ranger Insurance Company, St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines Insurance Company, and the Travelers Company, Defendants.**

No. 1:95–CV–101.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 2, 1996.

Sherrill W. Colvin, Haller and Colvin, Fort Wayne, IN, Ronald E. Christian, Whitney E. Bakley, Indiana Gas Company, Indianapolis, IN, Edward P. Henneberry, Ezra C. Levine, Peter C. Condron, Howrey and Simon, Washington, DC, Charles H. Samel, Howrey and Simon, Los Angeles, CA, for Plaintiffs.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Scott H. Sirich, Plunkett and Cooney, Detroit, MI, Charles W. Browning, Kenneth C. Newa, Stephen P. Brown, Richard G. Szymczak, Aetna Casualty and Surety Company, Detroit, MI, Thomas W. Yoder, Miller Carson Boxberger and Murphy, Fort Wayne, IN, Patrick Cremin, Michael J. Sehr, Audrey S. Hanrahan, Jerome J. Duchowicz, Haskell and Perrin, Chicago, IL, James S. Felt, Steptoe and Johnson, Washington, DC, David J. Bloss, Grand Rapids, MI, Dennis F. Cantrell, Bingham Summers Welsh and Spilman, Indianapolis, IN, Erik H. Aldeborgh, Boston, MA, Michael D. Ramsey, James E. Rocap, Jr., Rocap Witchger and Threlkeld, Indianapolis, IN, Thomas J. Quinn, Stephen Thomas Roberts, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, William L. Sweet, Jr., Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Kenneth W. Biermacher, Dallas, TX, William Anaya, James S. Stickles, Janet A. Kachoyeanos, Johnson and Bell LTD, Chicago, IL, Mary K. Reeder, Riley Bennett and Egloff, Indianapolis, IN, Kathy P. Waring, Sonia S. Waisman, Luce Forward Hamilton and Scripps, San Diego, CA, Arthur G. Surguine, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Karen H. Flax, Robert C. Johnson, Sonnenschein Nath and Rosenthal, Chicago, IL, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This matter is before the Court on Aetna Casualty and Surety Company's July 10, 1996 "Motion for Summary Judgment as to Plaintiff's Third Cause of Action Alleging Breach of the Covenant of Good Faith and Fair Dealing, or, alternatively, for Partial Summary Judgment as to Plaintiffs' Claim for Punitive Damages." Plaintiffs responded to that motion on July 31, 1996, to which Aetna responded on August 9, 1996. For the following reasons, the motion for summary judgment will be denied.

### Factual Background

Believing that long-standing coal tar pits on Indiana Gas' property in Shelbyville,

Indiana were causing water well contamination, Indiana Cities Water Corporation (ICWC), on June 3, 1988 notified Indiana Gas of its intent to file suit with respect to that site. On June 8, 1988, Indiana Gas retained the law firm of Hill, Fulwinder, McDowell, Funk & Matthews to assist it in assessing its potential liability at the site and, in the event of litigation, to prepare for suit. Shortly thereafter, the law firm of Ross & Hardies was hired by Indiana Gas. None of the insurers of Indiana Gas were involved in the decision to hire these law firms.[1] Anthony Ard, a Vice President of Indiana Gas, directed the activities of these law firms.

By June 16, 1988, Indiana Gas had established a deferred account for the expected litigation in the amount of one million dollars.[2] The deferred account was doubled by June 8, 1989, in part because Indiana Gas expected that it was going to incur additional legal and consulting expenses related to the litigation over the next twelve months.[3]

By letter dated November 7, 1988, Indiana Gas tendered to Aetna for defense and indemnity the underlying ICWC lawsuit. Indiana Gas continued to press numerous carriers for defense of the underlying action, including excess carriers because Indiana Gas believed that they were "not automatically absolved from any duty to defend."

Aetna sent the claim to its Indianapolis office. It was assigned to Senior Claims Representative Teri Paul, n/k/a Teri Phillips.[4] By a reservation of rights letter dated April 5, 1989, Aetna advised Indiana Gas as follows regarding the ICWC lawsuit:

> Although it is questionable if the damages sought fall within the terms and conditions of Aetna's comprehensive general liability policies, we agree to investigate and participate in the defense of this suit under a full reservation of rights to disclaim coverage at a later date. If you have not already done so, we would suggest that you urge the insurers covering you prior to and subsequent to Aetna's policies to join in the defense.

None of Indiana Gas' other insurance companies ever agreed to participate in the defense of the ICWC lawsuit under a full reservation of rights or otherwise.[5]

By letter dated June 5, 1989, Indiana Gas submitted to Aetna "copies of all payments made to attorneys, consultants, etc." regarding the ICWC litigation. Indiana Gas requested Aetna to "review this documentation and advise ... on your position of reimbursement as well as the frequency at which you would prefer to receive this type of supporting documentation." The gross amount of the payments was then approximately $156,-000.00.[6] In 1989, Linda Marshall, one of

---

1. By letter dated June 14, 1988, Indiana Gas advised AEGIS Insurance Services, Inc., a captive insurance company servicing the gas and electric producing industry, of the ICWC claim arising from the Shelbyville site. Indiana Gas did not place any other insurance companies on notice of the claim at this time. Approximately five months later, on November 21, 1988, Indiana Gas attempted to notify all of its past primary and excess insurance carriers of the claim, demanding that all such carriers provide a defense and indemnification.

2. The purpose of the deferred account was to set aside money that Indiana Gas might have had to spend as a result of the litigation including out of pocket expenses not covered by insurance.

3. By this time, Indiana Gas had been made a defendant in the ICWC suit with the filing of an amended complaint in *Indiana Cities Water Corp. v. Knauf Fiberglass*, Civil Action No. IP87–630 (S.D.Ind.) in October 1988.

4. Senior Claims Representative Steven Raymond, who handled all of Aetna's environmental claims at that time in Indiana was unable to handle this claim due to a conflict because he was already handling a claim arising from the ICWC lawsuit by another Aetna policyholder (CertainTeed) which was a defendant in the ICWC litigation long before Indiana Gas was added to the suit. During the pendency of the ICWC lawsuit, Aetna had participated with Travelers Insurance and their mutual policyholder, CertainTeed, in paying a percentage of the reasonable and necessary defense costs incurred in the defense of CertainTeed.

5. While Indiana Gas may never have urged its other carriers to join with Aetna in participating in the defense of the lawsuit as requested by Aetna in the April 5, 1989 letter, it had demanded defense and indemnification from all of its insurers under applicable policies in the November 21, 1988 letter.

6. Indiana Gas now seeks reimbursement of approximately one million dollars in defense costs arising from the Shelbyville suit although Indiana Gas never submitted invoices for this

several Aetna claims handlers to which the Indiana Gas' claim had been assigned, promised that a review of the submitted bills would be made in depth.[7]

By letter dated September 20, 1990, counsel for Indiana Gas requested Aetna to provide a "statement of your position regarding payment of Indiana Gas Company's defense fees and costs." The letter also pointed out that they had previously submitted the requested information and documentation and had not heard from Aetna in spite of promises that Aetna would review the submissions and get back to Indiana Gas. Linda Marshall who was then handling the claim did not respond to this letter either.[8]

In late Spring of 1991, Aetna established a regional environmental claims office located in Indianapolis to handle all environmental claims within a fourteen state region including Indiana. As a result, the Shelbyville claim was reassigned from Marshall to Regional Environmental Claim Analyst Mallory A. Cherry. After reviewing the claim file, Ms. Cherry advised her supervisor in August 1991 that Indiana Gas had "submitted a total of $155,626.60 in costs which it believes to be related to defense of this matter. As yet, no formal request for contribution has been made. We do not know which other insurance carriers may be involved." Additional request were then sent to Indiana Gas requesting further information. Indiana Gas did not respond to those requests.[9]

By letter dated November 13, 1992, Indiana Gas placed Aetna on notice of pur-

ported insurance claims arising from 29 MGP sites operated by Indiana Gas or previous owners.[10] The Indiana claims were assigned to Aetna Regional Analyst Sherri Sprinkle. She wrote Indiana Gas on April 1, 1993 attaching a reservation of rights letter addressing the policies Indiana Gas had with Aetna. She also wrote that she was then going on vacation but upon her return she would contact Indiana Gas regarding the claims made against it and establish a date for a review of Indiana Gas' records relating to the sites. Subsequently, Ms. Sprinkle had various conversations with Mr. Whiteside of Indiana Gas regarding the claims made against the various sites. On May 6, 1993, Mr. Whiteside wrote a letter to Aetna regarding the Shelbyville site [11] which among other things stated:

IGC again demands payment pursuant to the policy (or policies) of the amount of its losses. The amount of losses to date is approximately $1,731,908.50. This amount includes the $700,000 settlement paid by IGC to resolve the case that had been pending before the United States District Court for the Southern District of Indiana, *Indiana Cities Water Corporation v. Knauf Fiber Glass, et al.*, Cause No. IP87–630C, payments to consultants, attorneys' fees and the like.

(Ind.Gas Res. ex. 5).

On April 14, 1995, Indiana Gas instituted this action against Aetna and certain other insurance companies seeking damages for breach of contract and declaratory relief from nine of the Indiana Gas MGP claims, including the Shelbyville claim. Indiana Gas

additional amount until after this suit was instituted.

**7.** Apparently, neither she nor any one else at Aetna conducted such a review or responded to Indiana Gas' submission until June of 1996.

**8.** She testified in her deposition that she had no recollection of seeing this letter and hence did not recall responding to it. She also could not explain why there was no response.

**9.** Indiana Gas takes the position that the reason that it did not respond to the two requests was that all of the information had already been provided.

**10.** There is a dispute between the parties as to whether Indiana Gas was aware that Aetna would be considering the 29 claims as a group of

claims by the same policyholder instead of individually.

**11.** In its response, Indiana Gas characterizes the letter as "again request[ing] reimbursement of Indiana Gas's defense costs associated with the Shelbyville claim." (Ind.Gas Res. p. 14). By way of reply, Aetna contends that this characterization "is a blatant misrepresentation which can (and should) be disregarded by the Court. The very author of that letter (Jeffrey Whiteside), testified that the identical form letter which was also sent to AEGIS did *not*, in fact, request reimbursement of defense costs." (Aetna rep. p. 8) (italics in original). In this Court's view, the letter speaks for itself.

amended its complaint on September 6, 1995, to add a "Third Cause of Action—Breach of the Covenant of Good Faith and Fair Dealing (Against Defendant Aetna Only)," asserting that Aetna acted in bad faith by not reimbursing Indiana Gas for expenses incurred in the defense of the ICWC lawsuit.[12] On June 11, 1996, Aetna paid Indiana Gas $151,073.92 towards the defense costs for the Shelbyville site.[13]

### Application of Law

As indicated at the outset, Aetna has moved for summary judgment with respect to Indiana Gas' claim for the breach of covenant of good faith and fair dealing. After a review of the standards governing summary judgment, the parties arguments will be considered.

### A. *Summary Judgment Standards*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether there are genuine issues of material fact, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends there is no genuine issue. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record all material facts to which the non-movant contends there

---

12. After receiving notice of Indiana Gas' intent to add a bad faith claim, Aetna requested copies of additional invoices relating to Indiana Gas' defense costs for the Shelbyville claim.

13. Additionally, Indiana Gas has received $11,-279,000 in settlement of assorted manufactured gas plant claims.

are exists a genuine issue necessary to be litigated. *See Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

### B. *Breach of Duty of Good Faith and Punitive Damages*

In Count III of the first amended complaint, Indiana Gas asserts a cause of action for the tortious breach of the covenant of good faith and fair dealing by Aetna. The thrust of the complaint is that although Indiana Gas tendered the Shelbyville claim to Aetna in 1988, Aetna has failed over the ensuing seven year period of time to assume the defense of Indiana Gas with respect to the lawsuit instituted by ICWC and then

failed to pay for that defense by reimbursing Indiana Gas at any time since the underlying action was settled in 1991. Aetna has moved for summary judgment by asserting, *inter alia:* that the Indiana Supreme Court [14] would not recognize a cause of action for the tortious breach of the duty of good faith in the context of a third party claim; that even if such a tort exists in Indiana, the Indiana Supreme Court would not find such a tort under the facts of this case; and that even if such a tort exists and even if the present facts support such a tort, there is insufficient evidence to support a claim for punitive damages. This Court must disagree with all of those contentions. In order to properly address the parties' respective arguments, the Court must overview briefly the law in Indiana as it relates to a claim against an insurer for bad faith.

"Indiana long recognized the recoverability of punitive damages for abusive conduct by insurers, but the rationale for such an award has changed significantly in recent years." *Schimizzi v. Illinois Farmers Insurance Co.,* 928 F.Supp. 760, 769 (N.D.Ind.1996). Early on, awards of punitive damages were sustainable for breach of an insurance contract only when that breach was accompanied by an independent tort such as fraud or malice. *See, Vernon Fire & Cas. Ins. Co. v. Sharp,* 264 Ind. 599, 349 N.E.2d 173 (1976). That was in keeping with the general rule in Indiana that punitive damages could only be awarded in contractual cases when accompanied by an independent tort. *See, Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* 608 N.E.2d 975 (Ind.1993) (collecting cases).

In *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515 (Ind.1993), the general rule in Indiana insofar as it related to insurance contracts was changed. There, the Indiana Supreme Court held that "it is in society's interest that there be fair play between insurer and insured," *id.* at 519, and therefore the court recognized "a cause of action for

---

14. Indiana substantive law governs this aspect of plaintiffs' complaint.

the tortious breach of an insurer's duty to deal with its insured in good faith...." *Id.*[15]

"The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.*[16] The Indiana Supreme Court went on to "note that this new cause of action does not arise every time an insurance claim is erroneously denied." *Id.* p. 520.[17]

■ In the present matter, this Court cannot rule as a matter of law that the Indiana Supreme Court would not recognize a cause of action in tort for the breach of the duty of good faith in the context of a breach of a duty to defend a third-party claim. While *Erie* was decided in the context of a first party claim, it was not limited to first party claims.[18] The description of the tort recognized by the Indiana Supreme Court in *Erie* is "broad" *Donald v. Liberty Mut. Ins. Co.,* 18 F.3d 474, 484 (7th Cir.1994), and among the "non-exhaustive" list of an insurer's contractual obligations is "the obligation to refrain from ... causing an unfounded delay in making payment...." *Erie,* 622 N.E.2d at 519. Further, the tort announced in *Erie* has been extended to third party claims, albeit in the context of where an insurance company refuses to settle an underlying action against the policyholder within policy limits thereby exposing the policyholder to an excess judgment. *Economy Fire & Casualty Co. v. Collins,* 643 N.E.2d 382 (Ind.App. 1994); *see also Donald, supra* at 483 ("Although Donald is not an insured but is rather a third party beneficiary of one of the provisions in the contract of insurance, the same factors that militated in favor of recognizing a duty of good faith and fair dealing between the insurer and its insured in *Hickman* persuade us that Indiana would impose the same duty upon an insurer and a third party beneficiary of the insurance policy").

■ Nor can this Court conclude that Aetna's refusal to pay the costs of defense was done in good faith. In its briefs, Aetna offers what it views to be reasonable explanations for failure to pay, repeatedly characterizing that failure as "inadvertence" and suggesting that the claim simply "fell through the cracks." "Whether [defendant's] explanations are reasonable or not depends upon matters that the jury must decide, including witness credibility." *Nelson v. Jimison,* 634 N.E.2d 509, 512 (Ind.App.1994). "Hence, if [plaintiff] can prove by a preponderance of the evidence either that [defendant's] refusal to pay ... was unfounded, or that it acted improperly [by deceiving the insured or by unfoundedly delaying payment, plaintiff] will have demonstrated that [defendant] committed the tort of bad faith dealings by an insured." *Donald, supra* at 484. Thus, summary judgment will not be granted with respect to Indiana Gas' claim that Aetna breached its duty of good faith.[19]

---

15. In doing so, the Indiana Supreme Court noted that a majority of states also recognize such a right. *Id.* at n. 1.

16. The list was not intended to be exhaustive but rather was more in the nature of "general observations." *Id.*

17. Thus, "a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith," nor will "the lack of diligent investigation alone...." *Id.*

18. Indeed, in its opinion, the Indiana Supreme Court wrote: "Although the majority of states recognize a cause of action in tort in the context of third-party claims and a lesser number of first party claims ... there is no uniform approach among individual states. Given the variety of ways in which tort claims for the failure of the insurer to exercise good faith may arise, ... it is neither necessary nor prudent for us to fully define the parameters of the tort in this opinion." 622 N.E.2d at 519, n. 2.

19. Aetna also argues that because Indiana Gas engaged counsel and directed the course of the ICWC litigation, this somehow absolves it of liability. Regardless of the fact that Aetna was aware that Indiana Gas had retained counsel (at least one lawyer apparently is frequently used by Aetna) and did not object or request that counsel be substituted, Aetna has cited no authority to support its assertion that a policyholder's retention of counsel somehow insulates Aetna from a claim of bad faith as a matter of law.

But "[plaintiff] is not yet out of the woods." *Id.* "[I]n most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action." *Erie, supra,* 622 N.E.2d at 519. Thus, merely establishing the tort of breach of duty to exercise good faith does not entitle one to punitive damages. Rather, "[p]unitive damages may be awarded only if there is clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing ...'" *Id.* "Additionally, where the substantive law mandates a 'clear and convincing' standard of proof, as in this case, the court in disposing of a summary judgment motion must consider whether a reasonable factfinder could conclude that the plaintiff had sufficient evidence to meet that burden." *McLaughlin v. State Farm Mut. Auto. Ins. Co.,* 30 F.3d 861, 866 (7th Cir.1994).

"Whether an insurer has committed a tort in addition to breaching its contract, and whether its conduct was sufficiently egregious to warrant the imposition of punitive damages under Indiana law, involves both questions of fact and mixed questions of law and fact." *Id* at 868. Here, Indiana Gas has presented sufficient evidence to allow the question of Aetna's alleged bad faith to go to the jury.

In their briefs, Aetna admits that it inadvertently failed to pay Indiana Gas' claim and that it "fell through the cracks." Given the repeated correspondence and questions about the status of the claim, this suggests gross negligence, or at least a jury could so find. " '[W]here the defendant's motive or state of mind is an essential element of the plaintiff's case, a court must be circumspect in granting summary judgment based solely on the defendant's categorical denial that the

requisite state of mind existed.' " *Wauchop v. Domino's Pizza, Inc.,* 832 F.Supp. 1577, 1580 (N.D.Ind.1993) (quoting, *Corrugated Paper Products Inc. v. Longview Fibre Co,* 868 F.2d 908, 914 (7th Cir.1989)).

Moreover, Aetna claim's handler Linda Marshall (who perhaps not insignificantly to a jury was one of several who would review the claim and take no action) admitted that while such claims would usually be responded to, for some reason Indiana Gas' claim regarding the ICWC litigation was not, even though the normal claim would be handled within six months. Whether Aetna simply dropped the ball or whether instead it was grossly negligent in this case presents a quintessential jury question. At issue is the state of mind of Aetna and whether it acted with malice or oppressiveness. It is for the jury to make that determination.[20]

### Conclusion

On the basis of the forgoing, the "Motion for Summary Judgment as to Plaintiff's Third Cause of Action Alleging Breach of the Covenant of Good Faith and Fair Dealing, or, alternatively, for Partial Summary Judgment as to Plaintiffs' Claim for Punitive Damages" filed by defendant Aetna Casualty and Surety Company on July 10, 1996 is hereby DENIED.

---

**20.** The foregoing is not intended to suggest that in all cases where there is a conclusion that summary judgment should be denied regarding a claim that an insurer breached a duty of good faith it follows perforce that a claim for punitive damages arising out of that conduct must also be given to the jury. As the court in *McLaughlin* clearly pointed out, a court must consider whether a reasonable factfinder could conclude that plaintiff had sufficient evidence to support an award of punitive damages. In that case, as here, however, "there are substantial disputes about material facts and inferences to be drawn from circumstantial evidence." 30 F.3d at 868.