**Joel CLAY, Petitioner,**

v.

**Daniel McBRIDE, Respondent.**

**No. 3:96–CV–0040 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 7, 1996.

See also, 950 F.2d 486.

Joel Clay, Westville, IN, Pro Se.

James D. Dimitri, Office of the Attorney General, Indianapolis, IN, for Respondent.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, Chief Judge:

On January 16, 1996, petitioner, Joel Clay ("Clay"), filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court, challenging three separate convictions imposed by the State of Indiana. Clay is currently incarcerated at the Westville Correctional Facility in Westville, Indiana, and has filed his petition *pro se.*

### *I. INTRODUCTION*

This case began when Clay filed three separate petitions challenging three different convictions under § 2254. On April 19, 1996, after determining that all three petitions were related, the court consolidated the three cases into this cause. The three convictions at issue are as follows: (1) a 1977 burglary conviction from the LaPorte County

Superior Court; (2) a 1979 forgery conviction from the LaPorte County Superior Court; and (3) a 1985 burglary conviction and habitual offender determination from the Porter County Superior Court. Clay has completely served his sentences on the 1977 burglary and 1979 forgery convictions. However, these convictions were used as predicate offenses for the 1985 habitual offender determination. *See* IND. CODE § 35–50–2–8. Clay now attempts to challenge the constitutionality of these convictions since they were used as a basis to enhance the prison sentence he currently serves. On June 7, 1996, the respondent filed his return to order to show cause, demonstrating the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). The petitioner filed his traverse to order to show cause on August 23, 1996. It must be noted that this court believes in giving prompt and close attention to all § 2254 petitions. However, it has taken more time than usual to review this petition due to the very complex and convoluted state court record produced in this case. In order to preserve judicial efficiency in this case, the court will now address the merits of Clay's petition by discussing one conviction at a time.

## II. STANDARDS OF REVIEW

A claim under 28 U.S.C. § 2254 requires the federal *habeas* court to ensure that the state criminal conviction was not achieved at the expense of the petitioner's constitutional rights. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), described the role of the federal district courts in habeas proceedings:

> A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court

and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791.

Following *Jackson, supra,* there is an increasingly long line of cases in this circuit, including the very recent decision in *Brumley v. Detella*, 83 F.3d 856, 861 (7th Cir.1996), which suggest that the facts found by the highest court of a state are presumed to be correct. *See also, Milone v. Camp*, 22 F.3d 693, 697 n. 2 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 720, 130 L.Ed.2d 626 (1995); *Cuppett v. Duckworth*, 8 F.3d 1132, 1141 (7th Cir.1993) (en banc), *cert. denied,* 510 U.S. 1180, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994); *Andersen v. Thieret*, 903 F.2d 526, 531 (7th Cir.1990). "This deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings 'lacked even fair support in the record.'" *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983); *see also Mills v. Jordan*, 979 F.2d 1273, 1279 (7th Cir.1992).

The Congress of the United States has recently codified the holdings of *Jackson* and its progeny through the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"). The AEDPA amended 28 U.S.C. § 2254, in relevant part, as follows:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

 It also must be understood that this court does not sit to correct any errors of state law. *See Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and *Kraushaar v. Flanigan,* 45 F.3d 1040 (7th Cir.1995). Further, this court does not sit as a trier de novo in state court criminal proceedings and does not sit as a court of general common law review. The collateral review that is envisioned by § 2254 focuses on violations of the Constitution, treaties and laws of the United States. *See Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989).

The AEDPA also amended the standards a federal court must apply when reviewing the merits of a collateral challenge to a state criminal conviction under § 2254. Congress amended § 2254 in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, when addressing the merits of Clay's claims, the court must now review them under the amended standard. *See Lindh v. Murphy,* 96 F.3d 856, 865 (7th Cir.1996) (holding that "the amended § 2254(d) is designed to curtail collateral review and augment the finality of judgments, which strongly implies application to existing judgments"). With these preliminaries aside, the court will now address Mr. Clay's challenges.

## III. IN CUSTODY REQUIREMENT

 Because Clay finished serving the sentences on his 1977 burglary conviction and 1979 forgery conviction before this petition was filed, the court must determine whether it has jurisdiction to consider Clay's petition for writ of *habeas corpus.* Section 2254(a) grants federal courts jurisdiction to entertain a petition for relief from an individual who, at the time the petition is filed, is "in custody" for the conviction the petitioner is challenging. *Maleng v. Cook,* 490 U.S. 488, 490, 109 S.Ct. 1923, 1924–25, 104 L.Ed.2d 540 (1989). However, the Supreme Court of the United States has not interpreted the "in custody" language as requiring that an inmate be physically confined in order to challenge his sentence on a petition for writ of *habeas corpus. Id.* at 491, 109 S.Ct. at 1925.

Mr. Clay seeks to attack the constitutionality of two convictions for which he has completely served the applicable sentences. However, Clay seeks to challenge his 1977 burglary conviction as well as his 1979 forgery conviction through the 1985 determination by the Porter County Superior Court that he qualifies as an habitual offender under Indiana law.

 It is well settled in the Seventh Circuit that a petitioner may challenge the constitutionality of a past conviction even though the custodial term of that conviction has totally expired only if the petitioner is currently in custody by virtue of a sentence that was enhanced on the basis of that prior conviction. *Tredway v. Farley,* 35 F.3d 288, 292 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995) (citing *Smith v. Farley,* 25 F.3d 1363, 1365–66 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 908, 130 L.Ed.2d 791 (1995)). Put another way, Clay must establish that his *current* confinement violates the Constitution or laws of the United States. Thus, in order to succeed on his petition, he must establish not only that the 1977 burglary conviction or the 1979 forgery conviction is invalid but also that these convictions were used to augment the sentence for which he is presently incarcerated. *See Crank v. Duckworth,* 905 F.2d

1090, 1091 (7th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991) (*"Crank I"*).[1]

In this case, it appears that the state trial court based its finding that Clay qualified as an habitual offender in part on the basis of Clay's 1977 burglary and 1979 forgery convictions. Thus, the court finds that Clay's current sentence was enhanced in part on the basis of these 1977 and 1979 convictions. As a result, the court finds that Cox has satisfied the "in custody" requirement of § 2254 under the holdings of *Maleng, Crank,* and *Smith* with regard to the 1977 and 1979 convictions and, thus, the court has jurisdiction to address the merits of the claims challenging these convictions.

### IV. 1977 BURGLARY CONVICTION

■ The court will first address Clay's 1977 conviction for burglary. In 1976, the State of Indiana charged Clay with second degree burglary in the LaPorte County Superior Court. On June 10, 1977, Clay pled guilty to the charge at his arraignment. As a result, Judge *Pro Tempore* Robert W. Gilmore, Jr., sentenced Clay to two to five years in prison. With respect to this conviction, the respondent argues that Clay is not entitled to federal habeas relief because he received a full and fair opportunity for collateral review of that conviction in the courts of the State of Indiana. Thus, it is necessary to discuss the procedural background of this conviction as it traveled through the state court system.

After completing his sentence on this conviction in April 1978, Clay waited until the conviction was used as a predicate offense to his habitual offender determination before seeking post-conviction relief ("PCR") in the state court. In his PCR petition, Clay argued that his guilty plea was not entered knowingly, voluntarily and intelligently, violating his rights under the Fifth and Sixth Amendments to the United States Constitution. After requesting representation from the Indiana Public Defender's office, Clay ultimately chose to proceed without aid of counsel on his PCR petition.

On July 23, 1986, Judge Donald D. Martin of the LaPorte County Superior Court held an evidentiary hearing on Clay's PCR petition. Both Clay and the State were permitted to present evidence with respect to Clay's 1977 guilty plea. *See* Record of Proceedings for Cause No. Criminal 4742, Tr. 47–91. On July 30, after fully reviewing the evidence presented, Judge Martin denied Clay's PCR petition, finding that Clay's guilty plea was voluntary and that the petition was barred by the equitable doctrine of laches.

Clay appealed the denial of his PCR petition to the Indiana Court of Appeals. The Court of Appeals also determined that Clay's guilty plea was entered voluntarily and affirmed the trial court's decision. Consequently, Clay filed a motion for rehearing and a petition for transfer to the Supreme Court of Indiana. However, both of these efforts were denied.

After fully exhausting review on his first PCR petition, Clay filed a second PCR petition in 1988, claiming that his plea counsel was ineffective. In response, the State moved to dismiss Clay's second petition on the basis that he waived his claim by failing to assert it in the first PCR petition. The state trial court granted the State's motion to dismiss on May 16, 1988. Clay also appealed this decision. The Indiana Court of Appeals, in a published decision written by Judge Staton, affirmed the trial court's decision, finding that Clay waived his claim to ineffective assistance of guilty plea counsel. *Clay v. State,* 533 N.E.2d 1270, 1273 (Ind.Ct.App. 1989), *reh'g denied, trans. denied.* Clay attempted to obtain a rehearing and filed a petition for transfer to the Supreme Court of Indiana but was unsuccessful on both endeavors.

■ The Seventh Circuit in *Tredway v. Farley, supra,* held "that unless. a defendant 'has already used his initial collateral review for his prior conviction,' 'a defendant's failure to use an initial opportunity to obtain review of a state conviction—in a direct appeal or collaterally, while still serving the sentence— should not bar him from obtaining later indi-

---

1. For the final chapter of the *Crank* episode, see *Crank v. Duckworth,* 969 F.2d 363 (7th Cir.1992),

*cert. denied,* 507 U.S. 923, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993) (*"Crank II"*).

rect review of the conviction now being used in a wholly new manner.'" 35 F.3d at 293 (quoting *Smith v. Farley*, 25 F.3d at 1367–68). However, in certain circumstances, a petitioner may lose his right to federal habeas review if he has received a full and fair opportunity to litigate his claims in the state courts—for the function of federal habeas is not to validate the outcome of proceedings in the state courts, but rather to confirm the propriety of those proceedings in view of the petitioner's rights under the United States Constitution.

In *Smith*, the Seventh Circuit analogized a scenario much like the present case with the principles of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In *Smith*, the petitioner challenged a conviction for which he had completely served the sentence. At the state court level, the petitioner had filed a PCR petition in part challenging his guilty plea. The state court provided the petitioner with a hearing on the merits of his claims. Citing *Stone*, the Seventh Circuit held that "[a]lthough we believe that one should generally have the opportunity to receive such post-enhancement review, we do not believe that the review must take place in federal court. State courts are as competent as federal courts to hear such a collateral claim." *Smith*, 25 F.3d at 1369. Thus, the Seventh Circuit found that the principles of comity and federalism outlined in *Stone* apply with special force where a petitioner who has already served the sentence on the conviction being challenged had the opportunity to obtain a full and fair post-conviction review of the merits of his guilty plea in the state courts—"a process that is essentially equivalent to federal habeas as a check on the constitutionality of the state's conviction and sentence." *Id.* at 1370 (citing *Stone*, 428 U.S. at 478 n. 11, 96 S.Ct. at 3044 n. 11).

In this case, the state court record establishes that the petitioner received a full and fair opportunity to challenge his guilty plea in his first PCR petition at the state court level. In the state trial court, Judge Martin held an evidentiary hearing on the validity of the guilty plea on July 23, 1996. After that petition was denied, the Indiana Court of Appeals also fully reviewed the propriety of Clay's guilty plea. As a result, Clay received a full and fair opportunity to present his claims in the state court. Further, following *Smith*, the court finds that the principles of comity and federalism counsel against addressing the merits of Clay's claims since he received such a review in the courts of the State of Indiana after the Porter County Superior Court used the 1977 conviction as a predicate offense to the habitual offender determination. Thus, the court now dismisses any claims challenging the 1977 burglary conviction.

## V. 1979 FORGERY CONVICTION

Mr. Clay also challenges the constitutionality of his 1979 forgery conviction that was used to enhance his 1985 burglary sentence. Specifically, he raises two claims in his petition relating to the 1979 forgery conviction: (1) that his plea of guilty was not entered knowingly, voluntarily and intelligently under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution; and (2) that the state trial court abused its discretion by refusing to reinstate his first PCR petition. The respondent's return to order to show cause is devoid of argument on Clay's claim that his guilty plea was not knowingly, voluntarily and intelligently entered. However, the respondent does argue that Clay's abuse of discretion claim is not cognizable under § 2254. The procedural history of Clay's 1979 forgery conviction can be summarized as follows.

On November 22, 1978, after Clay had completed his sentence on the 1977 burglary conviction, the State charged Clay with forgery and with being an habitual offender in the LaPorte County Superior Court. On July 6, 1979, Clay pled guilty to the forgery charge only. Subsequently, the State dismissed the habitual offender charge and Judge Donald D. Martin sentenced Clay to six years in prison on the forgery conviction.

In 1982, Clay was released from prison on the forgery conviction. Then, in 1983, Clay filed a *pro se* PCR petition in the LaPorte County Superior Court, seeking to attack the validity of his guilty plea. However, in 1984, Clay voluntarily dismissed his post-conviction petition with prejudice. This dismissal was

part of a plea agreement that Clay entered into with the State in an unrelated LaPorte County criminal case.

Despite his voluntary dismissal, Clay filed a second PCR petition in 1985 after the 1979 forgery conviction was used to enhance the sentence on his burglary conviction. In the second petition, Clay again challenged the validity of his 1979 guilty plea. The State responded to the second petition by filing a motion to dismiss and a motion for summary disposition. On July 23, 1986, the state trial court granted summary disposition for the State and denied Clay's PCR petition, finding that Clay's second petition raised the same grounds for relief as his first petition.

Clay renewed his post-conviction efforts by filing a motion to correct errors in the state trial court. However, that motion was denied. Subsequently, Clay, by counsel, filed a motion to reinstate his PCR petition, claiming that at the time he voluntarily dismissed his first petition he did not understand the meaning of the phrase "with prejudice." Thus, he argued that he did not realize that dismissing the petition with prejudice would foreclose him from filing another PCR petition on the 1979 forgery conviction. In 1988, after receiving a hearing, the state trial court overruled Clay's motion to reinstate the first PCR petition. Clay appealed that decision to the Indiana Court of Appeals. On appeal, he argued that the trial court abused its discretion when it denied the motion to reinstate. Later in 1988, the Court of Appeals affirmed the trial court's decision. On May 31, 1989, the Supreme Court of Indiana denied transfer of Clay's appeal.

## A. VALIDITY OF THE GUILTY PLEA

The court must address the merits of Clay's claim that his guilty plea was not entered knowingly, voluntarily and intelligently under the applicable standards of § 2254(d) as amended by the AEDPA. *See Lindh v. Murphy, supra.* Clay argues that, during his guilty plea hearing, Judge Martin of the LaPorte County Superior Court failed to advise him: (1) that he had the right to a speedy trial; (2) that his sentence could possibly be enhanced by a prior conviction; (3) that his sentence could possibly run concur-

rently with a federal sentence he was then serving; and (4) that his forgery conviction could possibly be used to enhance the sentence on a future conviction. Thus, Clay requests that the court invalidate the 1979 guilty plea.

This court has addressed the issue now before it in several published opinions. *See Flowers v. Hanks,* 941 F.Supp. 765, 774 (N.D.Ind.1996); *Kirk v. Duckworth,* 761 F.Supp. 77, 80 (N.D.Ind.1989), *aff'd,* 929 F.2d 703 (7th Cir.1991); *Freeman v. McBride,* 843 F.Supp. 452, 453 (N.D.Ind.1993), *aff'd,* 16 F.3d 1225 (7th Cir.1993); *Steele v. Duckworth,* 900 F.Supp. 1048, 1050 (N.D.Ind. 1994); *aff'd,* 62 F.3d 1419 (7th Cir.1995). A plea of guilty is more than a confession which admits that the accused performed various acts—it is itself a conviction. *See Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial: First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the states through the Fourteenth Amendment; second, is the right to trial by jury; and third, is the right to confront one's accusers. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court stated the applicable standard to be applied on the issue of waiver when an individual enters a plea of guilty:

> [A] plea of guilty entered by one fully aware of direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

*Id.* at 755, 90 S.Ct. at 1472. Thus, only when it develops that the petitioner was not fairly

apprised of the consequences of his decision to plea guilty can his plea be challenged under the Due Process Clause of the Fourteenth Amendment. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

Put another way, the basic decision that this court must make is whether the petitioner waived his constitutional rights and whether his plea of guilty was made voluntarily with the knowledge of those rights that were being waived as mandated by *Boykin, supra.* The state record must show that the guilty plea was entered voluntarily and with a full understanding of what the plea connotes and of its consequences. *Kirk,* 761 F.Supp. at 80. A guilty plea that is made by one fully aware of its consequences will stand unless it was induced by threats, misrepresentations or improper promises. *Id.*

In this case, Clay challenges the guilty plea to the charge of forgery which he entered on July 6, 1979. The court has carefully examined the transcript of the change of plea hearing held before Judge Martin which was filed by the respondent in this case.[2] First, the court advised Clay of his right to counsel at all stages of the proceedings. *See* Transcript of July 23, 1979, plea hearing ("Tr.") at 4. Clay was then instructed on his right to a trial by jury composed of twelve people selected according to the law. Tr. at 5. Next, Judge Martin explained to Clay that he had the right to confront witnesses and have his attorney cross-examine any State witnesses. Tr. at 5. Further, Judge Martin explained that Clay had the right to testify on his own behalf and that he could refuse to testify and remain silent. Tr. at 5.

Judge Martin also informed Clay that by pleading guilty, he was giving up his right to subpoena witnesses. Tr. at 5. Further, Clay was advised that the State was required to prove its case beyond a reasonable doubt and that he was presumed innocent until proven guilty. Tr. at 6. Clay also admitted

that his plea was being made voluntarily and that no threats had been made against him. Tr. at 7. Finally, Clay admitted under oath that he did in fact write the bad check for which he was charged. Tr. at 8.

According to Ind.Code § 35–35–1–2(a)(2)(A), the state trial court was required under Indiana law to inform the petitioner of his right to "a public and speedy trial by jury." However, in *White v. State,* 497 N.E.2d 893 (Ind.1986), the Supreme Court of Indiana held that a petitioner who claims that his plea was involuntary and unintelligent because the state trial judge failed to give an advisement required by § 35–35–1–2 has not met his burden of proof unless he pleads specific facts that establish that the trial judge's failure to make a full inquiry in accordance with § 35–35–1–2(a) rendered his plea involuntary or unintelligent. *Id.* at 905. A review of the Clay's petition establishes that state trial court did not fully follow § 35–35–1–2 by not advising him of his right to a speedy trial when taking his plea on the 1979 forgery conviction.

However, violations of state law are not cognizable under § 2254. *See Estelle* and *Kraushaar, supra.* Rather, this court must determine whether the petitioner's plea was made knowingly, voluntarily and intelligently *under federal law.* Based upon a review of the guilty plea hearing, the court finds that the state trial court fairly apprised the petitioner of the consequences of his decision to plea guilty under the applicable federal law, specifically the decisions of the Supreme Court of the United States in *Brady v. United States* and *Boykin v. Alabama.* During his plea hearing, Clay was informed of his privilege against self-incrimination and that he was waiving his right to testify by pleading guilty. Further, Clay was advised of right to a trial by jury and his right to confront government witness, however he affirmatively waived such rights. As a result, under *Brady v. United States* and *Boykin v. Alabama, supra,* the court finds that Clay entered his plea of guilty knowingly, volun-

---

2. The court must note that the state court record filed by the respondent was not a model of clarity with regard to its organization. The court strongly suggests that the Indiana Attorney Gen-

eral's office take time in the future to organize the state court record before filing it with the court when multiple convictions are challenged.

tarily and intelligently. Thus, in light of § 2254(d), the court holds that the state court's determination that Clay's guilty plea was properly entered did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law, and such a claim must be dismissed.

## B. ABUSE OF DISCRETION CLAIM

■ The petitioner also challenges his 1979 forgery conviction on the ground that the state trial court abused its discretion when it denied his motion to reinstate his first PCR petition on the forgery conviction. However, as explained above, this court does not sit to correct any errors of state law. *See Estelle* and *Kraushaar, supra.* Further, this court does not sit as a trier de novo in state court criminal proceedings and does not sit as a court of general common law review. The petitioner's claim that the state trial court abused its discretion in deciding an issue before it on post-conviction review is purely a question embedded in the laws of the State of Indiana. As such, it is not an issue that is cognizable under a petition for writ of habeas corpus under § 2254 and must be dismissed.

## VI. 1985 BURGLARY CONVICTION AND HABITUAL OFFENDER DETERMINATION

Clay also challenges the conviction which is the basis for his present term of incarceration—a 1985 burglary conviction and habitual offender determination. The procedural background of this conviction can be summarized as follows. On April 17, 1984, the petitioner was charged by Information with one count of burglary and with being an habitual offender. On February 4, 1985, a change of plea hearing was held and the petitioner submitted a plea of guilty to the both the burglary and habitual offender charges. As a result, on September 26, 1985, Judge Roger V. Bradford of the Porter County Superior Court sentenced Clay to an enhanced term of thirty-two (32) years in prison.

On May 27, 1987, the petitioner filed a PCR petition, attempting to overturn the 1985 conviction. In that petition, Clay initially claimed that his guilty plea counsel was ineffective. However in 1988, while the petition was pending, Clay filed a motion to correct erroneous sentence in the state trial court. Clay amended the motion to correct erroneous sentence to include a claim that the state trial court erred in sentencing him because the Information charging him as an habitual offender was defective. The state trial court disagreed with Clay and denied his motion.

Clay appealed the denial of his motion to correct erroneous sentence to the Indiana Court of Appeals. However, after reviewing his claims, the Indiana Court of Appeals affirmed the state trial court's denial of the motion to correct erroneous sentence in a memorandum decision. Clay subsequently sought transfer of his appeal to the Supreme Court of Indiana, but transfer was denied.

In 1991, Clay returned to his PCR petition challenging the 1985 burglary conviction by amending the petition to include a claim that the habitual offender Information was defective as well as the initial claim that his plea counsel was ineffective. After a hearing on the amended petition in 1992, the state trial court denied his amended PCR petition. Clay then appealed the denial of his PCR petition to the Indiana Court of Appeals. The Court of Appeals affirmed the state trial court's decision, finding that Clay failed to sustain his burden of showing that the post-conviction court erred in denying the petition. The Supreme Court of Indiana subsequently denied his petition for transfer.

In the petition for writ of habeas corpus now before the court, Clay raises two arguments on the 1985 conviction. First, he claims that the Information charging him with being an habitual offender was defective because it did not contain the dates when the predicate felonies were committed. Second, he contends that his plea counsel, Isaiah S. Gant, ineffectively represented him during his plea hearing. In support of this claim, Clay raises seven separate allegations: (1) that Gant erroneously failed to move for the dismissal of the Information setting forth the habitual offender charge; (2) that Gant failed to protect his right against self-incrimination;

(3) that Gant failed to maintain an attorney-client relationship; (4) that Gant was from Illinois and was not licensed to practice law in Indiana; (5) that Gant failed to offer an alibi defense and to depose a witness for the State; (6) that Gant failed to object to the State's evidence or prepare for cross-examination of the State's witnesses and (7) that Gant incorrectly induced him to plead guilty. Thus, the petitioner requests that the court grant him a writ of habeas corpus on the 1985 conviction and habitual offender determination.

The respondent argues that Clay fails to demonstrate that any of Gant's actions were unreasonable. Further, the respondent argues that Clay cannot show that but for counsel's performance he would not have pled guilty. Therefore, the respondent requests that the court deny Clay habeas relief on the 1985 conviction.

## A. VALIDITY OF THE CHARGING INFORMATION

█ The court will first address Clay's claim that the Information charging with being an habitual offender was defective. The state court's determination that Clay qualified as an habitual offender based upon the Information filed by the State is a question grounded purely on state law. Whether the Information was proper under Indiana law does not raise any question arising under the Constitution of the United States. Thus, since the court does not sit to correct any errors of state law or as a trier de novo in state court criminal proceedings, *see Estelle, supra,* the court finds that Clay's challenge to the validity of the charging Information fails to state a claim cognizable under § 2254. As a result, that claim is now dismissed.

## B. INEFFECTIVE ASSISTANCE OF PLEA COUNSEL

The petitioner also challenges the effectiveness of his counsel with relation to his decision to plea guilty to the charges of burglary and being an habitual offender. As a preliminary matter, the court notes that the merits of such an issue must be addressed under the standards as set forth in

§ 2254(d) as amended by the AEDPA. *See Lindh v. Murphy, supra.*

The Sixth Amendment guarantees to criminal defendants the right to assistance of counsel. *Gideon v. Wainwright,* 372 U.S. 335, 338, 83 S.Ct. 792, 793, 9 L.Ed.2d 799 (1963). The Supreme Court of the United States has recognized that "the right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970) (emphasis added). However, as the Supreme Court explained in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), whether counsel is effective or ineffective does not turn on a petitioner's subjective pleasure or displeasure with counsel's performance. The Court held that there are two essential elements to a successful claim of ineffective assistance of counsel under the Sixth Amendment:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes *both* showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064 (emphasis added).

The two-part test in *Strickland* has been applied to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58–61, 106 S.Ct. 366, 370–72, 88 L.Ed.2d 203 (1985). In *Hill,* the Supreme Court stated:

> In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more that a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson* [411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) ] and *McMann v. Richardson* [90 S.Ct.

1441, 25 L.Ed.2d 763 (1970) ]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. (Citations omitted).

*Id.* at 58–59, 106 S.Ct. at 370–71; *see also United States v. Jackson,* 93 F.3d 335, 337 (7th Cir.1996).

With respect to the first prong of the *Strickland* test, the respondent argues that the petitioner has failed to sufficiently establish that his plea counsel, Isaiah S. Gant, acted unreasonably. Thus, the court must address each allegation of ineffectiveness to determine whether Clay can establish that his counsel's actions were unreasonable.

■ Clay first alleges that Gant failed to move for dismissal of the Information that charged him as an habitual offender. After reviewing the record, this allegation does not establish that Gant acted unreasonably. It is undisputed that the original Information did not specifically set forth the predicate felonies that were the basis for the habitual offender charge. However, Clay's initial attorney, who represented Clay before Gant, had filed a motion to dismiss the Information because it was defective. That motion became moot not long after Gant entered his appearance for Clay because the State amended the habitual offender information to include the specific predicate offenses that were the basis for the habitual offender charge. Therefore, the court finds that Gant's failure to file a second motion to dismiss was not unreasonable under the circumstances.

■ Clay next alleges that Gant failed to protect his right against self-incrimination. However, a review of the transcript of the February 4, 1985, plea hearing establishes that Judge Bradford of the Porter County Superior Court advised Clay of his right to remain silent and right against self-incrimination. *See* Record of Proceedings for Cause No. 84–PSCR–55, Tr. 30. Therefore, it was unnecessary for Gant to protect Clay's right against self-incrimination since the court itself advised Clay of the right and Clay affirmatively waived it. Therefore, Clay's second allegation does not establish that Gant's representation was unreasonable.

■ The third allegation contends that Gant failed to maintain an attorney-client relationship. A review of the record reveals that this allegation is unsupported by the evidence. As the respondent indicates, Gant appeared in court on Clay's behalf numerous times and visited Clay at the Porter County Jail occasionally to consult with him. Therefore, this allegation also fails.

■ Fourth, Clay argues that Gant's representation was ineffective since Gant, from Illinois, is not a licensed attorney in Indiana. The record indicates that Gant moved to appear *pro hac vice* on Clay's behalf, citing that he had represented criminal defendants in the Indiana courts on five prior occasions. The state trial court granted the motion, allowing Gant to legally represent Clay on his Indiana charges. Therefore, since the state trial court found Gant reasonably competent to represent Clay on his charges, the fact that Gant was admitted *pro hac vice* is sufficient evidence from which to find that Gant's failure to be licensed as an attorney in Indiana is not enough to render his performance unreasonable.

■ Next, Clay contends that Gant failed to offer an alibi defense and to depose a witness for the State. This claim is clearly without merit. According to the record, Clay voluntarily pled guilty to the burglary and habitual offender charges. *See* Record of Proceedings for Cause No. 84–PSCR–55, Tr. 34. Thus, by making the decision to plea guilty, Clay rendered the need for discovery and the presentment of defenses moot. Therefore, the court finds that it also was not unreasonable for Gant to choose not to depose a witness and offer an alibi defense.

■ Sixth, Clay argues that Gant failed to object to the State's evidence or prepare for cross-examination of the State's witnesses. Again, it must be noted that Clay pled guilty; therefore, there was no need for his counsel to object to the State's evidence

or to cross-examine any witnesses. Further, Clay admitted to the burglary during his plea hearing, stating, "I broke into a gun shop with a sledge hammer, went in and attempted to remove some firearms from the structure." *See* Record of Proceedings for Cause No. 84–PSCR–55, Tr. 34. Therefore, this allegation also must be dismissed.

██ Clay concludes by arguing that Gant induced him to plead guilty. However, the record is devoid of any evidence which would substantiate such a claim. Further, Clay acknowledged that he did not receive any promises in return for his guilty plea and that he was not threatened or forced to plea guilty by anyone. *See* Record of Proceedings for Cause No. 84–PSCR–55, Tr. 33. As a result, this allegation also fails.

Accordingly, the court finds that Clay has failed to demonstrate that any of Gant's actions in representing him were unreasonable and, thus, Clay cannot fulfill his burden of proving that Gant's performance was unreasonable as required by the first prong of the *Strickland* test. Further, there is no need for the court to determine whether, but for counsel's errors, Clay would not have pleaded guilty since Clay has not established that counsel in fact erred in his representation. Therefore, in light of § 2254(d), the court holds that Mr. Gant's representation of Clay was not contrary to the Sixth Amendment to the United States Constitution and, thus, Clay's claim of ineffective assistance of plea counsel must be dismissed.

## VII. CONCLUSION

In conclusion, based upon the court's review of the entire record, the court finds that the petitioner has failed to raise grounds which warrant federal habeas corpus relief on any of the three state court convictions challenged in this petition. Therefore, the court now **DENIES** Mr. Clay's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and this cause is now **DISMISSED WITH PREJUDICE.** The clerk shall enter judgment accordingly. **IT IS SO ORDERED.**