NOT RECOMMENDED FOR PUBLICATION

File Name:  15a0149n.06

No. 14-5635

## UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

FILED

Feb 25, 2015

DEBORAH S. HUNT, Clerk

PITT EXAVATING, LLC,                               )

    *Plaintiff–Appellant*,                      )

                                  )

                                    )    ON APPEAL FROM THE UNITED

v.                                )    STATES DISTRICT COURT FOR THE

                                    )    MIDDLE DISTRICT OF TENNESEE

                                    )

MARY LOU PITT,                                     )

    *Defendant–Appellee*.                      )

---

Before: BOGGS and McKEAGUE, Circuit Judges; PEARSON, District Judge[*].

    BOGGS, Circuit Judge.  This case concerns the question of whether a person's domicile is his new Tennessee apartment or his old Kentucky home.  Plaintiff-Appellant Pitt Excavating, LLC (Pitt Excavating), a Tennessee limited-liability company, filed this action for conversion and breach of fiduciary duty under the federal diversity statute against Mary Lou Pitt and John Pitt, III (Trey Pitt), both Kentucky citizens.  Pitt Excavating is wholly owned by John Pitt, II (Mr. Pitt), who is Mary Lou's former husband and Trey Pitt's father.  Mr. Pitt resided primarily at the Kentucky farm that Mary Lou received in their divorce decree until several weeks before he filed this lawsuit, when he moved to an apartment that he leased in Tennessee after Mary Lou initiated legal process to evict him from the Kentucky farm.  The district court initially held that

---

[*] The Honorable Benita Y. Pearson, United States District Court for the Northern District of Ohio, sitting by designation.

1

Pitt Excavating met its burden of proving Tennessee citizenship for diversity purposes. However, after Mary Lou presented evidence of Mr. Pitt's continuing Kentucky ties, the district court concluded that Mr. Pitt had used Pitt Excavating to manufacture diversity to file a vexatious law suit against his former wife. Accordingly, it held that it lacked jurisdiction to hear the case and awarded attorney's fees in the amount of $22,376.42 to Mary Lou. Pitt Excavating timely appeals, and we affirm for the reasons set forth below.

## I. Background

John Pitt, II is Plaintiff-Appellant Pitt Excavating's sole owner and controlling member. He and Defendant Mary Lou Pitt had been married and divorced three times. After their most recent divorce in 2008, John and Mary Lou cohabitated at the Kentucky farm located at 1840 Peden Mill Road, Franklin, Kentucky, a home that the divorce decree awarded to Mary Lou. While the 2008 divorce decree awarded the Kentucky farm to Mary Lou, Mr. Pitt sold several farm tractors, as well as bales of hay that he cut from the farm estate, without Mary Lou's consent. On July 17, 2013, Mary Lou filed an eviction petition against her former husband. Mary Lou continued to work as bookkeeper and office manager for Pitt Excavating until her employment was terminated, also in July 2013.

On September 10, 2013, Pitt Excavating filed a lawsuit against Mary Lou Pitt for conversion and breach of fiduciary duty in the United States District Court for the Middle District of Tennessee under diversity jurisdiction. The complaint sought a temporary restraining order to prevent Mary Lou Pitt from selling real estate, valuable tools, and equipment that allegedly belonged to Pitt Excavating. Also in September 2013, Mr. Pitt filed a materialman's lien on the farm for approximately $1.7 million and a petition in Kentucky state court to set aside the 2008 divorce decree that awarded the farm to Mary Lou, based on a claim of

2

unsciounability.  The affidavit for the materialman's lien is dated September 13, 2013—three days after the filing of this action—and lists Mr. Pitt's address as "1840 Peden Mill Road, Franklin, Kentucky."

Mary Lou, a Kentucky citizen, moved to dismiss the action for lack of diversity jurisdiction.  Although Pitt Excavating is a Tennessee limited-liability company, she argued that its sole owner, John Pitt, II, had been a Kentucky citizen at all times relevant to this action.  Pitt Excavating responded in its September 20, 2013 Amended Complaint that Mr. Pitt was domiciled in Tennessee prior to filing this diversity action, contradicting Mr. Pitt's affidavit for the materialman's lien against the farm.  Pitt Excavating demonstrated that Mr. Pitt has leased an apartment in Madison, Tennessee since November 2012, has a valid Tennessee commercial driver's license, and pays federal taxes on income that he earned in Tennessee.  Pitt Excavating also averred that Mr. Pitt "is able to vote" in Tennessee, but this claim was later contradicted by Mr. Pitt's deposition that was taken on October 1 and filed on October 22, 2013.  The district court held on October 1, 2013 that Pitt Excavating proved its citizenship for diversity purposes.

Mary Lou moved to reconsider on October 9, 2013 and the district court heard evidence in support of this motion on October 21, 2013.  At the hearing, Mary Lou presented evidence that Mr. Pitt is not a citizen of Tennessee, but rather of Kentucky.  This evidence included Mr. Pitt's July 22, 2013 objection to the Kentucky state-court eviction proceedings, in which he asserted that he had "in actuality continued living on that [Kentucky] marital estate together" with Mary Lou since their 2008 divorce.  Mr. Pitt's son (Trey Pitt) and girlfriend (Kristy Hulsey) corroborated this evidence.  Trey testified that his father resided continually at the Kentucky farm until he faced eviction in July 2013.[1]  Hulsey testified that, although Mr. Pitt had sometimes

---

[1] Mr. Pitt threatened to add his son as a defendant in this lawsuit for testifying at the October 21, 2013 hearing.  *Pitt Excavating LLC,* 2013 WL 6708679, at *3.  Mr. Pitt added Trey as a defendant on November 4, 2013.

stayed with her in the Madison, Tennessee apartment since November 2012, he did not begin to "stay at the apartment almost exclusively" until eviction proceedings began in July 2013. Lou also produced Mr. Pitt's deposition taken on October 1, 2013. In the deposition, Mr. Pitt claimed that he has lived in the Madison, Tennessee apartment with Husley since November 2012 but admitted to spending two to three nights per week at the Kentucky farm throughout September 2013.

After reviewing this evidence, the district court gave Pitt Excavating an opportunity to file a response but warned that it was considering sanctions for unreasonably and vexatiously multiplying proceedings under 28 U.S.C. § 1927. Appellant's Br. at 8. Pitt Excavating's counsel continued to assert that Mr. Pitt was a citizen of Tennessee as of September 10, 2013. On December 18, 2013, the district court held that it lacked jurisdiction to hear this case because the litigants are all Kentucky citizens and awarded attorney's fees and costs under 28 U.S.C. § 1927. *Pitt Excavating LLC v. Pitt*, No. 3:13-CV-00909, 2013 WL 6708679, at *1 (M.D. Tenn. Dec. 18, 2013) *order set aside in par*t, No. 3:13-CV-00909, 2014 WL 1715442 (M.D. Tenn. Apr. 30, 2014). The plaintiff's counsel responded with a motion to alter or amend. On April 30, 2014, the district court partially granted this motion by setting aside sanctions under 28 U.S.C. § 1927, and instead imposed $22,376.42 in sanctions under its inherent authority because it found that Mr. Pitt "is using [Pitt Excavating] and this Court to relitigate issues that the Kentucky court clearly decided and to which John W. Pitt, II agreed. Such multiplication of proceedings is vexatious and bad faith . . . ." *Pitt Excavating*, 2014 WL1715442, at *4. Pitt Excavating timely appeals.

## II. Standard of Review

"We review a district court's legal determination of subject matter jurisdiction *de novo* and factual determinations for clear error." *U.S. Motors v. Gen. Motors Europe*, 551 F.3d 420, 422 (6th Cir. 2008). "We also review for abuse of discretion the decision to impose sanctions pursuant to Rule 11, Rule 26, 28 U.S.C. § 1927, and the district court's inherent power." *Jones v. Illinois Cent. R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010). "An abuse of discretion occurs when a court commits a clear error of judgment by, for example, applying the wrong legal standard or relying on clearly erroneous findings of fact.*" Green v. Bank of Am. Corp*., 530 F. App'x 426, 429 (6th Cir. 2013) (internal quotation marks omitted).

## III. Discussion

### A

"[F]ederal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists. This duty applies irrespective of the parties' failure to raise a jurisdictional challenge on their own, and if jurisdiction is lacking, dismissal is mandatory." *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998) (citations omitted). Pitt Excavating argues that the district court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332, which provides the district courts with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and involves "citizens of different States."

The amount in controversy in this case, approximately $1 million, is well in excess of the jurisdictional requirement. Mary Lou and Trey Pitt are citizens of Kentucky. As a limited-liability company, Pitt Excavating is a citizen of every state of citizenship of its members.

*Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990). Pitt Excavating's only member is John Pitt, II. Therefore, there is diversity of citizenship as long as Mr. Pitt is not a citizen of Kentucky. Despite Pitt Excavating's argument that Mr. Pitt is a citizen of Tennessee, the district court held that he is a citizen of Kentucky and so it could not exercise jurisdiction under 28 U.S.C. § 1332.

"State citizenship for the purpose of the diversity requirement is equated with domicile. A person's previous domicile is not lost until a new one is acquired." *Von Dunser v. Aronoff,* 915 F.2d 1071, 1072 (6th Cir. 1990) (citations omitted). "To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel v. Hopkins,* 477 F.2d 1116, 1120 (6th Cir. 1973). "[F]ederal jurisdiction is tested according to the facts as they exist at the time an action is initiated." *Television Reception Corp. v. Dunbar,* 426 F.2d 174, 177 (6th Cir. 1970). The factual dispute at issue is whether Mr. Pitt's threatened eviction from the Kentucky farm in July 2013, his lease of a Tennessee apartment since November 2012, and his Tennessee licenses obtained in 2011 and 2012 evince an intent to remain indefinitely in Tennessee as of September 10, 2013, the date of filing.

In his July 22, 2013 objection to the Kentucky state-court eviction proceedings, Mr. Pitt declared that he had been living with Mary Lou on their "marital estate" in Kentucky since their divorce in 2008. Mr. Pitt's son also testified that his father continually resided at the Kentucky farm until he faced eviction in July 2013, and Mr. Pitt's girlfriend testified that he "stayed almost exclusively at the [Madison, Tennessee] apartment" only after eviction proceedings began in July 2013. Further, Mr. Pitt testified on October 1, 2013 that he voted in Kentucky in 2012 and

continues to be registered to vote in Kentucky as of that date.  Therefore, as of July 2013, Mr. Pitt was domiciled in Kentucky.

Pitt Excavating argues on appeal that Mr. Pitt abandoned his Kentucky domicile and "became a domiciliary of Tennessee in August 2013" in response to an eviction action brought by Mary Lou Pitt.  Appellant's Br. at 18 ("Ms. Pitt's attorneys in Kentucky demanded on July 9 that [Mr. Pitt] vacate the Kentucky farmhouse immediately and then instituted eviction proceedings against him.  There is no mystery as to why [Mr. Pitt] did as he was asked and moved to Tennessee.").  However, the eviction, by itself, does not establish that Mr. Pitt abandoned Kentucky for Tennessee because "one who is in a place solely by virtue of superior force exerted by another should not be held to have abandoned his former domicile."  *Stifel*, 477 F.2d at 1121; *see also Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) ("[S]ince domicile is a voluntary status, a forcible change in a person's state of residence does not alter his domicile.").  A person who has been forcibly removed from a residence in one state can demonstrate intent to domicile in a difference state in the typical way through "affidavits of intention, transfer requests, registration for driver's licenses, opening bank accounts, addressing tax returns, motive for establishing domicile, and other physical facts evidencing the desire to remain [in the new state]." *Stifel*, 477 F.2d at 1122.  But Mr. Pitt has not done so.

Mr. Pitt frequently stayed at his Madison, Tennessee apartment in the weeks leading up to the lawsuit, satisfying the physical-presence requirement.  However, Mr. Pitt acquired the apartment in November 2012, while he was a Kentucky citizen, and there is no indication that his on-and-off stay in this apartment since that time—including post-eviction-proceedings activities—changed his domicile from Kentucky to Tennessee.

Since eviction proceedings began in July 2013, Mr. Pitt has done nothing to evince an intention to stay in Tennessee indefinitely, such as changing his voter registration from Kentucky to Tennessee. If anything, he has demonstrated a continued attachment to Kentucky. Even though he stayed in Tennessee more frequently in response to the eviction proceedings, Mr. Pitt still admitted to staying in Kentucky two to three nights per week as of September 2013. He did so notwithstanding Mary Lou's attempt to evict him. This behavior is highly probative of a continuing desire to remain domiciled at the Kentucky farm. Furthermore, Mr. Pitt has displayed an intention to reclaim his old Kentucky home at the time he filed this action on September 10, 2013. He filed a materialman's lien against the farm and petitioned to set aside the divorce decree awarding the farm to Mary Lou Pitt in Kentucky state court. He even listed his address as "1840 Peden Mill Road Franklin, Kentucky" in the affidavit for the materialman's lien signed on September 13, 2013—three days after the commencement of this lawsuit.

In light of these factors, spending four to five nights a week for a few weeks in Madison, Tennessee does not demonstrate that Mr. Pitt abandoned Kentucky and intended to live in Tennessee indefinitely. Nor do the other items that Mr. Pitt relies on, such as his Tennessee commercial driver's license and contractor's license, demonstrate any such intention. Mr. Pitt acquired the licenses in 2011 and 2012, when he was undoubtedly a citizen of Kentucky.[2] The licenses are minimally probative of intent to domicile in Tennessee because Mr. Pitt acquired them well before the event—proceedings to evict him from the Kentucky farm—which he now claims to be the cause of his intent to domicile in Tennessee. Accordingly, it was not clearly erroneous for the district court to conclude that Mr. Pitt was a citizen of Kentucky when this lawsuit was filed.

---

[2] It would have been a class D felony for Mr. Pitt to have voted in Kentucky in 2012 if these licenses showed that he was a resident of Tennessee when acquiring them. K.R.S. 119.165(2).

Pitt Excavating also argues on appeal that the district court deprived it of notice when it held an evidentiary hearing on jurisdiction at the October 21, 2013 hearing because that hearing was originally scheduled to discuss preliminary-injunction issues. Appellant's Br. at 13-14. May Lou Pitt filed a motion to reconsider on October 9, 2011 and specifically requested that the district court hold an evidentiary hearing on jurisdiction on October 21, 2013. Pitt Excavating neither objected to this request nor asked for a continuance. While the district court did not expressly grant Mary Lou's motion before holding the evidentiary hearing, it did not need to do so because the hearing related to subject-matter jurisdiction. The district court had a continuing obligation to inquire into the basis of subject-matter jurisdiction, even in the absence of a motion from a party. *Campanella*, 137 F.3d at 890. To meet this obligation, "a trial court has wide discretion to allow affidavit, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Therefore, even without Mary Lou's motion, the district court could have requested information pertaining to diversity jurisdiction from the parties. Pitt Excavating also had an opportunity to respond to the district court's jurisdictional inquiry after the October 21, 2013 evidentiary hearing. The district court considered the arguments supporting diversity jurisdiction that Pitt Excavating raised in its response on November 4, 2013, but found them unpersuasive. *Pitt Excavating*, 2013 WL 6708679, at *2.

**B**

A federal "district court has the inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Nat'l Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (internal quotation marks omitted). The district court made a factual finding that Mr. Pitt had attempted to use Pitt

9

Excavating to manufacture diversity in an attempt to relitigate the Kentucky divorce proceeding. *Pitt Excavating*, 2013 WL 6708679, at *5. In a subsequent order ruling on Pitt Excavating's motion to alter or amend, the district court again found that the prior Kentucky state-court divorce proceeding allocated the property at issue in this lawsuit. "Such multiplication of proceedings," the district court concluded, "is vexatious and bad faith." *Pitt Excavating*, 2014 WL1715442, at *4.

Pitt Excavating neither disputes the district court's finding that it filed this case vexatiously to multiply proceedings nor challenges the court's invocation of its inherent authority to award fees. Instead it argues that "[n]ot all the attorney's fees expended by the Defendant would be properly recoverable," Appellant's Br. at 20, because "[a]n attorney is liable . . . solely for excessive costs resulting from the violative conduct," *Riddle vs. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001). However, all of Mary Lou's litigation expenses are excessive costs that were incurred as a result of the plaintiff's misconduct because the district court concluded that the entire case was filed vexatiously. Therefore, the district court did not abuse its discretion in awarding attorney's fees equal to the entirety of Mary Lou's litigation expenses.

## IV. Conclusion

For the aforementioned reasons, we AFFIRM the district court's judgment.